IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KEITH J. HILL | * |
|     Plaintiff, | |
| v. | * CIVIL ACTION NO. WDQ-04-2562 |
| | |
| GOV. ROBERT L. EHRLICH | * |
| FRAN C. SIZER | |
| ROBERT J. KUPEC | * |
| DR. COLEMAN, PSYCHIATRIST | |
|     Defendants. | * |

******

**MEMORANDUM**

I.  Procedural History

Plaintiff filed this civil rights action[1] against the Governor, the Commissioner of Corrections, the Warden of the Eastern Correctional Institution ("ECI"), and ECI prison psychiatrist Dr. Coleman. He alleges that prior to his August 22, 2003 remand into the custody of the Maryland Division of Corrections ("DOC") he was prescribed medication for Attention Deficit Disorder ("ADD")/Attention Deficit Hyperactivity Disorder ("ADHD") and bipolar disorder. Plaintiff complains that once received in the DOC, he was denied medication and treatment for his disabilities. Paper No. 1. He specifically claims that: (i) the ECI psychiatrist has refused to administer Adderall[2] as prescribed by his family doctor; (ii) Warden Kupec has refused to acknowledge and treat ADD/ADHD; and (iii) Commissioner Sizer and Governor Ehrlich have either dismissed his claims or failed to respond to his complaints and documentation.  *Id*.

---

[1]   The Complaint was filed on a 42 U.S.C. § 1993 form, but also cites to the Americans with Disabilities Act of 1991 ("ADA").

[2]   Adderall is a daily extended-release, single-entity amphetamine indicated for the treatment of ADHD. *See* Physician's Desk Reference (PDR") at 3144-3146 (58th Ed. 2004).

Plaintiff seeks unspecified compensation and treatment for his illness and disabilities.[3]  *Id*.

State Defendants Ehrlich, Sizer, and Kupec have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which has been construed as a Motion for Summary Judgment.[4]  Paper No. 20.  Plaintiff has filed a Motion to Strike Defendants' summary judgment motion, an Opposition response, and a Motion for Summary Judgment by Default.[5]  Paper Nos. 22, 23, 26, & 27.  The case is ready for the Court's consideration.  Oral hearing is not warranted.  *See* Local Rule 105.6. (D. Md. 2004).

## II.  Summary Judgment Standard

Summary Judgment is proper if, viewed in a light most favorable to the nonmoving party, "the pleadings....and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).  The nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the evidence, but the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  In essence, the inquiry of the court must focus on whether the evidence presents a

---

[3]  Plaintiff later filed additional materials to "explain....my condition as far as my diagnosis for bipolar disorder and AD/HD."  Paper No. 12.  In his cover letter Plaintiff discusses his various addictions (alcohol and cocaine) and disabilities.  *Id*.  He indicates that his medications were terminated upon his transfer to the DOC and he did not receive the drugs until after he briefly saw mental health staff.  *Id*.  He complains that he was then informed that he would not receive the Adderall.

[4]  Service of process was not effected on Defendant Coleman.

[5]  Plaintiff complains that the State Defendants did not file any opposition materials to his supplemental documents filed on January 25, 2005, and that he is entitled to the entry of summary judgment by default.  Paper No. 27.  Defendants' decision not to file an opposition or surreply to Plaintiff's supplemental Motion to Strike and Opposition materials does not place them in a default situation.  The Motion for Summary Judgment by Default shall be denied.

sufficient disagreement to require submission to a jury or whether it is so one-sided that only one party may prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). If the evidence is such that a reasonable jury could not return a verdict for the nonmoving party, summary judgment should be granted.

### III. Americans With Disabilities Act ("ADA") Standard

To make out a prima facie case under the ADA,[6] Plaintiff must show that: (i) he is a person with a disability as defined by statute; (ii) he is otherwise qualified for the benefit in question; and (iii) he was excluded from the benefit due to discrimination based upon disability. *See* 42 U.S.C. § 12131, *et seq.*; *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995). Assuming Plaintiff has shown that he suffers from an ADA-qualifying disability, he has not alleged that he has been discriminated against or disqualified from receipt of any benefits due to a disability. He has, for all intents and purposes, simply alleged that he has not received a particular medication and treatment for ADHD. The Court therefore finds that Plaintiff has failed to present a viable ADA claim.

### IV. Eighth Amendment Standard

As an inmate sentenced to confinement, Plaintiff is entitled to receive reasonable treatment for his

---

[6] Presumably, Plaintiff's claim is proceeding under Title II of the ADA. To maintain such a claim, Plaintiff must show that: (i) he is a qualified individual with a disability; (ii) he is being excluded from participation in, or being denied the benefits of some service, program, or activity, by reason of his disability; and (iii) the entity that provides the service, program, or activity is a public entity. *Hallett v. New York*, 109 F.Supp.2d 190, 198 (S.D. N.Y. 2000). This Court has found that Title II of the ADA does not abrogate state sovereign immunity under the Eleventh Amendment. *Biggs v. Board of Education of Cecil County, Maryland*, 229 F.Supp.2d 437, 440-44 (D. Md. 2002). The Supreme Court has addressed this issue. *See Tennessee v. Lane*, 541 U.S. 509, 124 S.Ct. 1978 (2004). In *Lane*, a class of paraplegics alleged that Tennessee had denied them physical access to the state's courts in violation of Title II of the ADA. The Court upheld Title II as a valid exercise of Congress's § 5 authority under the Fourteenth Amendment as applicable to cases implicating the fundamental right of access to the courts and concluded that Eleventh Amendment immunity would be abrogated in such circumstances. *Lane*, 124 S.Ct. at 1994. In reaching its conclusion, the Supreme Court made abundantly clear that its holding was limited to cases involving the fundamental right of access to the courts. *Id.* at 1992-93 & 1994 n. 20. Such a fundamental right is not implicated here.

serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Failure to provide treatment, may amount to "deliberate indifference to [the] serious medical needs of prisoners" and result in "the 'unnecessary and wanton infliction of pain,'...proscribed by the Eighth Amendment." *Id*. Deliberate indifference is shown by establishing that defendants had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk.[7] *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995). Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference, interference, or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury. *See Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). Officials are, however, entitled to rely on the professional judgment of trained medical personnel with regards to a prisoner's medical history and the need for medical care. *Id*. at 854-55.

The State Defendants allege that Plaintiff, housed at ECI since September 4, 2003, has been diagnosed with bipolar disorder. Paper No. 20, Ex. 1. He was first seen by ECI staff psychiatrist Dr. Coleman on September 22, 2003, after refusing his prescribed psychotropic medication, Valproic Acid.[8]

---

[7] There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). A prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id*. The *Bowring* Court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not because such care is considered merely desirable. *Id*. at 48.

[8] Valproic acid is an anti-convulsant medication primarily used to treat seizures and migraines. It also is widely used by psychiatrists as a mood stabilizing medication and is approved to treat bipolar disorder. *See* http//www.psychcentral.com/meds/valproic_acid.html#uses and www.loftusmd.com/Articles/AED/depakoate.html.

*Id*. They maintain that Plaintiff was also threatening to refuse to take his Prozac[9] at that time and wanted to be treated by a physician outside of the DOC. Paper No. 20, Ex. 1.

According to the State Defendants' exhibits, Plaintiff was again seen by Dr. Coleman on October 21, 2003. *Id*., Exs. 1 & 2. He requested a decrease in his Prozac and continued to be non-compliant with the Valproic Acid. *Id*. The Prozac was decreased pursuant to Plaintiff's request. The State Defendants claim that since December 7, 2003, Dr. Coleman has followed up with Plaintiff's care every eight to twelve weeks and Plaintiff has remained on Prozac. *Id*. They argue that because no prison physician has diagnosed Plaintiff with ADD/ADHD or found him to need Adderall, Plaintiff has not been denied constitutionally required medical care.

In response to the aforementioned dispositive motion, Plaintiff claims that the State Defendants' materials provide no supporting basis for refusing him treatment for ADD/ADHD. He seemingly alleges that he attempted to obtain treatment from medical and psychiatric professionals to no avail, and that he filed written requests to the Warden, Commission, and Governor. Paper No. 22. Plaintiff again reiterates his mental health treatment prior to his confinement in the DOC. Paper No. 23. He further complains that he has asked for ADD/ADHD treatment in the form of therapy, medications, and psychiatric evaluations and that as a result of the failure to treat this condition he has: (i) been unable to further his education due to his inability to concentrate and comprehend simple instructions; and (ii) he has suffered from mental distress and depression.[10] Paper No. 23.

---

[9] Prozac or fluoxentine hyrdrochoride, is a non-controlled substance indicated for the treatment of a major depressive disorder. PDR at 1840-1846 (58th Ed. 2004).

[10] In supplemental materials to his Motion to Strike and Opposition, Plaintiff again reiterates his complaints and concerns for the alleged failure to treat him for his ADD/ADHD. Paper No. 26. He provides a "journal" which reflects the alleged verbal complaints raised with prison officers and health care staff with regard to his medication between July of 2004 and September of 2004. *Id*. Also attached are: (i)

Documents presented to the Court indicate that prior to his incarceration, Plaintiff was privately treated with Adderall for ADHD. While detained at the Worcester County Jail Plaintiff was examined for a history of depression and ADHD. He was placed on Adderall and Prozac in May of 2003. The record indicates that soon after his arrival at ECI in September of 2003, Plaintiff was evaluated by Dr. Coleman and placed on regimen of Prozac and Valproic Acid. Plaintiff was not compliant with the Valproic Acid, but continued on the Prozac, which was adjusted and lowered pursuant to his request. Aside from the intake screening form, the subsequent ECI medical records provided this Court make no reference to an ADD/ADHD diagnosis or to treatment with Adderall. According to the materials currently before the Court, once Plaintiff arrived at ECI, Dr. Coleman never diagnosed Plaintiff with or treated him for ADD/ADHD. The psychiatrist only prescribed non-controlled drugs for treatment of depression and bipolar disorder.

Plaintiff has failed to project evidence establishing that Defendants Ehrlich, Sizer, and Kupec violated his Eighth Amendment rights with regard to his ADD/ADHD claims. Grievances filed with Warden Kupec concerned Plaintiff's complaints regarding the side-effects of his Prozac medication and the refusal to provide him Adderall. The letters sent to the Governor and Commissioner complain about the refusal to provide Adderall because it is a Schedule II controlled substance and the failure to furnish Plaintiff more frequent and in-depth psychiatric review. In response, Plaintiff was informed that: (i) his condition was being managed by a board certified psychiatrist; (ii) Adderall is a Schedule II controlled substance and is not used at ECI; (iii) he had been started on Valproic Acid and Prozac; and (iv) he was continuing to receive Prozac. Plainly, the State supervisory officials did not frustrate Plaintiff's psychiatric treatment.

---

additional medical records reflecting Plaintiff's mental health treatment in 2002, prior to his transfer to the DOC; (ii) Plaintiff's correspondence and grievances filed with prison and state officials; and (iii) various articles reflecting general protocols for treatment of ADHD. *Id*.

They relied on the decisions and representations of contractual health care providers with regard to Plaintiff's mental health care.[11]  No record evidence suggests why these officials should not have been entitled to rely upon the health care providers' expertise.  Consequently, their Motion for Summary Judgment shall be granted.

Plaintiff's Complaint against Dr. Coleman is more problematic.  The limited record thus far presented to this Court establishes that Plaintiff was seen by psychiatric staff once every eight weeks for follow-up care and prescribed Valproic Acid and Prozac. The materials do not, however, directly respond to Plaintiff's complaints that while Dr. Coleman has prescribed medication for bipolar disorder and depression, the psychiatrist had failed to provide him treatment for ADD/ADHD.  Therefore, the Court cannot at this juncture dismiss the claims against Defendant Coleman.  The Clerk and United States Marshal shall be directed to attempt to effect service of process on Defendant Coleman.

A separate Order shall be entered reflecting the opinion set out herein.


Date: May 23, 2005                             /s/
                                              William D. Quarles, Jr.
                                              United States District Judge

---

[11]  The State Defendants' materials indicate that the Department of Public Safety and Correctional Services ("DPSCS") maintains a policy which requires that the contractual psychiatrist for the DPSCS review a prisoner's case, interview the prisoner directly, and then prescribe the appropriate medications. Paper No. 26 at 48.  Prescriptions from a previous psychiatrist cannot be used. *Id*.